## W. W. BRUMMITT v. R. H. McGUIRE.

*Voluntary Payment of Money by Mistake—Recovery of Money Paid by Mistake—Full Knowledge.*

1. A plaintiff who pays money voluntarily, although there is no debt. with full knowledge of all the facts, cannot recover it back upon the ground that it was paid by mistake.

2. Nor if the payment be made in ignorance or mistake of fact, can it be recovered back when the means of knowledge or information is in reach of the party paying, and he is negligent in obtaining it.

3. When the plaintiff gave a note in settlement of money due, and found afterwards it was for too much, and then, in order to save harmless another person, he paid the full amount more than twelve months after its execution, and with full knowledge, or with ample means of obtaining such knowledge: *Held,* he was not entitled to recover it back.

This was a CIVIL ACTION, originally commenced before a Justice of the Peace, and tried, upon appeal, before *MacRae, J.,* at July Term, 1890, of GRANVILLE Superior Court.

The following is the case settled on appeal by appellee, and accepted by appellant:

The plaintiff alleged that the defendant was indebted to him for money paid in excess of rent account, for a certain house in Oxford for the year 1886.

The defendant denied the debt, and alleged besides that the matter in controversy had been compromised and settled by the execution of a chattel mortgage and bond; by the execution of a bond and security to stay proceeding; by the judgment of S. V. Ellis, J. P., and by the payment of said mortgage.

W. W. Brummitt, the plaintiff, testified: "I rented a house for the year 1886, in Oxford, of R. H. McGuire; I was to give him $125 for the year, and executed a note; I paid

him a quarterly payment in advance, and afterwards paid him $21.25, and $10; I stayed in the house about seven months, until about the 1st of August; I moved away about that time; the day I moved, Mr. Allen, defendant's attorney, told me he would indict me if I did not give him the keys, and I gave them to him. In February, 1888, eight months after I had left the house, one N. H. Whitfield, a clerk in defendant's store, proposed to me to buy my pony; I asked $80 for the pony; he said he would give it, and told me when to bring him down; I brought the pony, and Whitfield came out and told me to give him to the boy standing there, and he would pay me for the pony as soon as McGuire came back from the court-house. I waited until McGuire came back, and went into the office with him; McGuire said, 'You owe me a note I have got against you,' taking the note from his safe; I said I did not think I owed him anything; he said, 'Yes you do; we have got your pony, and you will have it to pay before you get him'; Whitfield said nothing to me about the note; he was not present. I then left. McGuire's office and went up to Whitfield's house to get my pony; Whitfield had the pony locked up, and told me if I could get him, to get him. I then went home; it was Saturday; Monday I came back and fixed up the papers to get the pony. I did not know how much I owed McGuire, and, before giving up the pony, he required me to execute to N. H. Whitfield a note for $38, secured by a chattel mortgage on the pony and other property, which was assigned to McGuire; I have paid the $38 note to McGuire. Since looking up the receipts I had taken, I find that on the day the note for $38 was executed, I owed him only $10.41; McGuire claimed I owed him the balance on the $125 note; it was $41 or $42 I paid McGuire on the $38 note made payable to N. H. Whitfield, and assigned to him. McGuire got a new tenant in about two weeks, I think."

Defendant's counsel then asked witness if he did not trade the pony before the Whitfield mortgage was due; if McGuire did not institute claim and delivery proceedings and take the horse from Young Dixon; if he was not present at the trial, and did not consent to the judgment of S. V. Ellis, J. P., and if he did not pay the $38 note to McGuire. To all these interrogatories the plaintiff objected, upon the ground that the plaintiff was not a party to the claim and delivery proceedings, and was not bound by the proceedings or the judgment therein rendered. Objection overruled. Witness then said he had heard of the claim and delivery but that he was not a party to the suit, nor was he present at the trial, nor did he consent to the judgment; that he paid the $38 note to protect Dixon; he traded the pony to Dixon.

"Judgment in case of N. H. Whitfield to use of R. H. McGuire against Young Dixon.   Settled between the parties April 24, 1889.                     S. V. ELLIS, J. P."

The note set out is for $38, executed under seal by the plaintiff Brummitt to N. H. Whitfield, on the 6th day of February, 1888, payable on or before the 1st day of October, 1888, "secured by mortgage" and endorsed by Whitfield to defendant McGuire, "without recourse."

Jordan McIver was sworn.   He said the house Brummitt lived in was occupied in about two weeks after Brummitt left.

B. T. Fuller was sworn.   He said he moved Brummitt from the house; it was the 1st of August.

R. H. McGuire testified: "Brummitt occupied the house until about the middle of August, and I did not get a renter in two or three weeks after the time.   I sold the Brummitt note for $125 (subject to a credit of $62 60) to Whitfield for

107—23

$20. He did not pay cash for the note, but I charged him up with the $20 the day I sold him the note. When Whitfield bought the pony of Brummitt, he offered the $125 note, on which $62.50 was due, and the balance in money, for the pony. Brummitt refused to do this. Whitfield took the new note for $38. After he got the note for $38 he assigned the same to me, without recourse. (Witness then produced his books, and, after examining them, said the entries were made in the book on February 9th, which was five days after the note was sold to Whitfield, and that the entry showed it was $18 instead of $20, as stated, but that the trade between him and Whitfield was fair and square). When I found that Brummitt had traded the pony on which I, as assignee of Whitfield, held the $38 note and mortgage, I instituted claim and delivery proceedings, and Crews, the constable, brought the pony to town under the papers. The day of the trial, April 24th, 1889, John Elliott came in and gave me his note at thirty days time to stay the proceedings. I took the note, and the suit was stopped and settled."

N. H. Whitfield testified: "I bought the $125 note from McGuire for $20. I didn't pay him cash. I bought the pony from Brummitt and sent him up home to the stable and locked him up. Brummitt executed the note and mortgage to me and I assigned it to McGuire. The trade between me and McGuire was fair and square."

There was a verdict and judgment for the plaintiff for $27.59.

The defendant excepted to the charge as given, and for failure to charge as requested. Also, because the Judge submitted the question of mistake in paying the debt by plaintiff, whereas, there was no evidence of such mistake to go to the jury. Motion for a new trial, because the verdict was contrary to the weight of the evidence, and because there was no evidence that the plaintiff or Elliott paid the defend-

ant more than he owed him for rent of the house by mistake. Motion overruled.   Appeal by defendant.

*Mr. T. T. Hicks*, for plaintiff.
*Mr. R. W. Winston*, for defendant.

DAVIS, J.: The defendant asked for eight specific instructions, all of which, except the seventh, which was given in part (what part was given and what refused does not appear), were refused.

If the defendant was entitled to any one of these instructions, and it was not cured by the charge as given, it was error.

It is well settled that money paid under a mistake of fact may be recovered back, and it is equally well settled that money demanded and paid with a full knowledge of all the facts cannot be recovered back.

The plaintiff's counsel relies upon the case of *Pool* v. *Allen*, 7 Ired., 120, and *Adams* v. *Reeves*, 68 N. C., 134.   In *Pool* v. *Allen*, Pool, the plaintiff, owed Allen, and having removed to another State, left two agents in this State, with directions, among other things, to pay the debt due the defendant, the then creditor, Allen.   Allen had placed the debt in the hands of a constable for collection.   One of the agents paid the money to the constable who had the claim in hand for collection, and the other agent, meeting with the defendant (creditor), paid the money to him, and after discovering that the money had been paid to the constable for the creditor (Allen, the defendant), it was held that the plaintiff (Pool, the debtor) could recover back the money paid under mistake, the debt having been already paid.   "The money was paid and received in discharge of a debt then believed to subsist.   In that," says RUFFIN, C. J., "there was a total mistake on the part of the person making the payment, and, probably, on that of the receiver also, and it is plain that

money, thus got under a mistake, and for no consideration, cannot be kept *ex equo et bono.*"

In *Adams* v. *Reeves* it is said: "A voluntary payment, with a knowledge of all the facts, cannot be recovered back, although there was no debt. But a payment under a mistake of fact may be," and for this many authorities are cited. We see nothing in *Pool* v. *Allen* or in *Adams* v. *Reeves* in conflict with the well settled law that money voluntarily paid, with a full knowledge of all the facts, cannot be recovered back.

But the plaintiff says: "In this case there was compulsion, for the horse, at the time the money was paid, or arranged to be paid, was locked up in the clerk's stable." This was no such compulsion or legal *duress* as to make void a payment made long thereafter, though made, as the plaintiff says, to "protect Dixon," to whom he had sold the mortgaged horse, and if there was any mistake as to the amount due when the note and mortgage were executed on February 6th, 1888, as a settlement of the controversy then existing between the parties, the plaintiff had ample time, before the note was due, the 1st of October following, and certainly before the payment was made, April 24th, 1889, by the exercise of ordinary diligence, to "look up the receipts he had taken," and discover the mistake *before* the money was paid. It appears from the testimony of the plaintiff himself that there was no material fact of which he was ignorant at the time of the payment, and no mistake as to the amount of the debt which, by ordinary diligence, he might not have discovered before the debt was paid. The plaintiff ought not to have given the note if the settlement was not satisfactory, and he ought not to have paid it more than a year after if he denied its correctness or validity.

In *Matthews* v. *Smith*, 67 N. C., 374, the plaintiff testified that "he was forced to pay the note to relieve his sureties from a suit," and it was held that he could not recover the

money back if he paid it with a full knowledge of the facts, and that the Court ought to have instructed the jury " that, according to plaintiff's own testimony, he had full knowledge of the facts."

In *Devereux* v. *Insurance Co.*, 98 N. C , 6, it was held that a payment voluntarily made, with a full knowledge of all the facts, though reluctantly done and under protest, cannot be recovered back.

Money voluntarily paid, with a knowledge of all the facts, cannot be recovered back, although there was no debt *Commissioners* v. *Commissioners*, 75 N. C., 240; *Commissioners* v. *Selzer*, 70 N. C., 426. Nor, if thus paid, can it be recovered back, though paid in satisfaction of an unjust demand; or one that had no validity. 4 Wait's Actions and Defences, 479, and cases there cited. Nor if the payment be made in ignorance or mistake of fact, can it be recovered back, where the means of knowledge or information is in reach of the party paying, and he is negligent in obtaining it. *Marriot* v. *Hampton*, 3 Smith's Leading Cases, 1711; *Adams* v. *Reeves*, *supra*.

Without expressing any opinion as to the method resorted to by the defendant to obtain payment of his claims for rent, we are of opinion that the plaintiff, when he gave the note in February, 1888, and, certainly, when he paid it more than twelve months thereafter, was, according to his own evidence, in possession, or by ordinary diligence might have been in possession, of all the facts upon which he bases his claim now set up to recover back the money, and might have availed himself of them in contesting the defendant's demand, but having given the note in February, 1888, and paid it in April, 1889, under no legal compulsion or duress, and without setting up any defence or contesting its validity for any cause, as he might have done, he waived any defence that he might have had, and, by his own act,

"settled," and cannot now, under the circumstances as testified by him, recover it back.

The defendant was entitled to the first instruction asked, and this relieves us of the necessity of considering the others.

