## SWIFT & CO. v. COLUMBIA RY., GAS & ELECTRIC CO.

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

No. 2525.

1. **Electricity ⬅11—Cotton crop shortage held not proximate cause of stoppage of seed mill, excusing payment for minimum amount of electricity under contract.**

Under contract of electric company with cotton seed mill, requiring mill to receive and pay for a certain minimum amount of power, but excusing it from doing so if it shall be prevented by reason of certain things from receiving, using, and applying the same, cause relied on as excuse must have been proximate cause of failure to perform, and cotton crop shortage was not such cause, where sufficient seed was produced in the trade territory to have kept the mill running, had it received all, or even a large part, of it, but it did not receive it, because it was bought by competitors, so that crop shortage was at most remote cause, affecting running of mill only as it affected trade conditions.

2. **Electricity ⬅11—Crop shortage held not included in "any cause," following specifically enumerated causes excusing seed mill from receiving minimum amount of electricity.**

Within contract for cotton seed mill to receive and pay for a minimum amount of electric power, but excusing it from doing so if it be prevented from using it by strikes, fire, flood, etc., "or any cause" reasonably beyond its control, *held*, under rule of ejusdem generis, that crop shortage was not included in "any cause."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Any.]

3. **Trial ⬅177—All questions of fact as well as law are submitted to judge by both parties moving for directed verdict.**

The effect of both parties moving for directed verdict is to waive jury trial and submit all questions of fact, as well as law, to the judge.

4. **Appeal and error ⬅997(3)—Unless there is no evidence to sustain it, finding on motion by both parties for directed verdict cannot be disturbed.**

Finding on motion of both parties for directed verdict cannot be disturbed, unless there is no evidence on which the finding can be sustained; that is, unless on the evidence verdict should have been directed for other party, as matter of law.

5. **Electricity ⬅11—Public rate held not fixed by electric company filing list of wholesale customers, with contract rate paid by each (Act S. C. March 24, 1922, § 3 [Civ. Code 1922, appendix, p. 1785]).**

In view of Act S. C. March 24, 1922, § 3 (Civ. Code 1922, appendix, p. 1785), filing by electric company with Railroad Commission, for its information, of list of wholesale customers, with contract rate paid by each, was not filing of schedule of public rates, protected by provision of the statute as to change of rates, but the special rate for each wholesale customer was limited to the life of its contract.

6. **Payment ⬅82(4)—Voluntary payment of excess electric rate cannot be recovered.**

Even if increase in rate by electric company was unauthorized, customer paying it voluntarily cannot recover the excess.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Ernest F. Cochran, Judge.

Action by the Columbia Railway, Gas & Electric Company against Swift & Co., a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

D. W. Robinson, of Columbia, S. C. (D. W. Robinson, Jr., of Columbia, S. C., on the brief), for plaintiff in error.

J. B. S. Lyles, of Columbia, S. C., for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. The Columbia Railway, Gas & Electric Company, a public service corporation of Columbia, S. C., was plaintiff in the District Court, and Swift & Co., a corporation of Illinois, was defendant, and they will be referred to here in accordance with their positions in that court.

Plaintiff filed complaint, seeking recovery on two causes of action—the first, for $2,298.40, balance alleged to be due on the minimum amount which defendant had agreed to pay for electric current to be furnished for the operation of its cotton seed oil mill, fertilizer plant, and ginnery during the season of 1922–23; the second, for $1,731.30, alleged to be due for electric current furnished during March, 1925. Defendant filed answer, admitting the execution of the contract sued on in the first cause of action, but denying liability on the ground that it was not obligated to pay the minimum amount fixed by the contract in case it should be prevented from receiving and using power of that value as the result of any cause reasonably beyond its control and not attributable to its neglect, and that it had been prevented

from using power of that value as a result of the shortage of the cotton crop, which in turn was due to bad weather conditions and the prevalence of the boll weevil. The second cause of action was admitted upon the trial, and no question is presented with respect thereto.

In its answer defendant asserted a counterclaim for the sum of $5,438.70, which amount it averred that plaintiff had collected from it for power furnished between September, 1923, and June, 1924, over and above the amount which plaintiff was lawfully entitled to charge. Plaintiff replied, denying the allegations of the counterclaim, and upon the issues raised by the pleadings a trial was had before the District Judge and a jury. At the conclusion of the testimony, plaintiff prayed the direction of a verdict on both of its causes of action and on the counterclaim of defendant, and defendant prayed the direction of a verdict on its counterclaim.

The court granted the motion of plaintiff, and this ruling is the basis of defendant's assignments of error. Two questions are raised by them: (1) Whether there was error in the direction of verdict for plaintiff as to its first cause of action; and (2) whether there was error in the direction of verdict against defendant as to its counterclaim.

The facts with respect to the first cause of action are that plaintiff is engaged in the production and sale of electric current for lighting and power purposes in the state of South Carolina, and the defendant is engaged in operating a cotton seed oil mill, fertilizer plant, and cotton ginnery at Columbia in that state. In the year 1916, plaintiff entered into a five-year contract with defendant, which was extended from year to year, so as to include the season of 1922–23, by the terms of which plaintiff agreed to furnish and deliver to defendant during its operating season, from October to May of each year, electric power for the purposes of defendant's business to the maximum demand of 700 horse power (being the equivalent of 522 kilowatts), and the defendant agreed to pay therefor at the rate of one cent per kilowatt hour with the following proviso:

"Provided, however, that the minimum annual payment under this contract shall be ten thousand ($10,000) dollars, whether power of that value actually consumed or not; said minimum payment being in consideration of the investment of the company for the electric power set aside and maintained in readiness to serve the consumer."

The contract also contained the following provision, which is the one material to this part of the controversy, viz.:

"Tenth. In the event the company shall be wholly or partially prevented from delivering the electric power contracted for herein, or in case the service thereof shall be interrupted, or in case the consumer shall be prevented from receiving, using, and applying the same, by reason of or through strikes, stoppage of labor, riot, fire, flood, invasion, insurrection, accident, the order of any court, judge, or civil authority, the act of God, or any cause reasonably beyond its control and not attributable to its neglect, then and in such event the company shall not be obligated to deliver said electric power hereunder during such period, and shall not be liable for any damage or loss resulting from such interruption or suspension, and the consumer shall not be obligated or liable to pay for such power not delivered, furnished, or supplied during such period; and in any and all such event or events the party suffering such interruption or suspension shall be prompt and diligent in removing the cause thereof, and either party whose plant shall suspend operation by reason of accident to its machinery, plant or system, shall proceed at once to repair the same within a reasonable time, and, failing to do so, the limit of or exemption from liability as fixed in this paragraph shall not apply, and the party so failing shall be liable to the other as though no such limit or exemption had been fixed."

For the season of 1922–23, defendant used and paid for current which at the contract rate amounted to $7,401.60, thus lacking $2,298.40 of paying the $10,000 minimum. There was evidence tending to show that its failure to use the minimum of current contracted for was due to its failure to obtain sufficient cotton seed to keep its mill running, and that this failure to obtain seed was due to the shortage of the cotton crop in that trade territory, resulting from weather conditions and the ravages of the boll weevil in the year 1922.

As the verdict was directed against the defendant on the first cause of action, it is our duty to consider the evidence offered on that cause of action in the light most favorable to defendant; but, even when it is so considered, there can be no question that the trial judge was correct in directing the verdict. Defendant having admitted the execution of the contract and that it has failed to pay the minimum amount specified therein, there remains but one question for our consideration, viz. whether under paragraph 10 of the contract defendant is absolved from

paying the balance alleged to be due because of the shortage of the cotton crop and the consequent difficulty of obtaining cotton seed to crush in its oil mill. Of course, weather conditions and the ravages of the boll weevil and the resulting shortage of the cotton crop were matters beyond the control of defendant, and not attributable to its neglect; but we think that they do not absolve defendant from the performance of its contract (1) because they were not the proximate cause of defendant's failure to receive, use, or apply the electric current; and (2) because they were not embraced within either the language or the spirit of the clause excusing performance.

[1] It will be noted that, to excuse performance under paragraph 10, the cause relied on must have been one which prevented defendant from receiving, using, or applying the electric current provided for. And it is settled that, to excuse performance under an absolving clause, the cause relied on must have been the proximate cause of the failure to perform. Berwind-White Coal Mining Co. v. Solleveld (C. C. A. 4th) 11 F. (2d) 80, and cases there cited; Williston on Contracts, vol. 3, § 1968. To excuse performance of this contract on the part of the defendant, therefore, it would have to appear that the cause relied on, viz. the weather conditions and the boll weevil resulting in the shortage of the cotton crop, was the proximate cause of defendant's failure to receive, use, or apply the current for which it had contracted. We are satisfied that in no proper sense can they be considered the proximate cause of such failure. It is not questioned that sufficient seed were produced in the trade territory to have kept defendant's mill running to full capacity, if it had received all, or even a large part, of them. It did not receive them, not because they were not produced, but because they were bought by competitors. The crop shortage was at the most a remote cause, affecting the running of the mill only as it affected trade conditions, and it was manifestly to guard against just this sort of thing that the minimum provision was inserted in the contract.

[2] But, even if the crop shortage be assumed to be the proximate cause of defendant's failure to use the minimum current contracted for, we are satisfied that such cause of failure does not fall within the conditions excusing performance. It will be observed that the general clause absolving the company from obligation to pay the minimum amount, if prevented from receiving, using, or applying the current by "any cause reasonably beyond its control and not attributable to its neglect," follows a particular specification of causes which shall excuse such performance, including "strikes, stoppage of labor, riot, fire, flood, invasion, insurrection, accident, the order of any court, judge, or civil authority, the act of God." And it is well settled that in such case the rule of construction known as Lord Tenderden's rule is applicable, that, where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described—ejusdem generis. Hickman v. Cabot (C. C. A. 4th) 183 F. 747; Southern Ry. Co. v. Columbia Compress Co. (C. C. A. 4th) 280 F. 344; Carnegie Steel Co. v. U. S., 240 U. S. 156, 36 S. Ct. 342, 60 L. Ed. 576. Crop shortage is not included among the causes specifically mentioned, nor is it of the same general class. All of the causes mentioned specifically are such as would directly interfere with receiving, using, or applying electric current, whereas a crop shortage could interfere only indirectly, by its effect upon trade conditions.

The facts bearing on the counterclaim are as follows: The contract of 1916, providing a rate of one cent per kilowatt hour, was for a period of five years, but was renewed for the two succeeding years, expiring April 1, 1923. On October 5, 1923, plaintiff wrote defendant, inclosing contract to be executed for current to be supplied during the coming season. This contract fixed the rate for power at prices ranging from 1.65 cents per k. w. h. for the first 25,000 k. w. h. used per month to 1.10 cents per k. w. h. for all current over 350,000 k. w. h. Defendant's local manager called to see plaintiff's manager with regard to the matter, and stated that he thought the rates were too high, and that he would have to take the matter up with defendant's Chicago office. The contract was never signed or agreed upon, but no further protest was made, and plaintiff furnished power to defendant during the season of 1923–24, sending monthly statements based on the rate embodied in the proposed contract. Defendant paid these statements as rendered; none of the bills, checks, or vouchers given in payment containing any notation as to payment under protest. The amount so paid was $19,972.62, which was $5,438.70 greater than it would have been, if computed on the flat rate of one cent per k. w. h., and it is this $5,438.70 which defendant seeks to recover on its counterclaim.

As bearing upon the legality of the rate charged, the following facts appear: In

1910 the Public Service Commission was created by statute in South Carolina, with power to fix and establish maximum rates for the supply of water, gas, and electricity. Code 1912, vol. 1, §§ 922–925. By act of 1922, however, this commission was abolished, and jurisdiction over such utilities was vested in the Railroad Commission. Act March 24, 1922, appendix Code of 1922, vol. 3, p. 1785. The act of 1922 also provided that, whenever a public utility company should desire to put into effect a new rate, it should file with the commission a new schedule or schedules embodying same, not less than 30 days prior to the time same were to become effective. In 1919 the Public Service Commission approved and put into effect a schedule of rates for electric power ranging from 9 cents to 3 cents per k. w. h. in accordance with the quantity of current used, which, however, made no provision for special rates to large users of power, generally termed wholesale customers. Some time prior to June 20, 1922, plaintiff filed with the commission a schedule of rates showing the charge for current as ranging from 9 cents to 3 cents per k. w. h., and containing the following statement:

"Power.—Retail rate same as lighting rate. Wholesale rate made by special contract.

"Special Rates.—For wholesale power customers only."

On June 20, 1922, the chairman of the Railroad Commission wrote plaintiff that, in looking over its schedules of rates, he found that they did not give plaintiff's wholesale power rates, and asked that plaintiff let the commission have these rates, so as to complete its schedules. On June 21, 1922, plaintiff wrote in answer to this letter that power to wholesale customers was furnished under contract, and that, to give a complete schedule of rates charged, it would be necessary to furnish a list of its power contracts. On July 21, 1922, it filed with the commission a list of its wholesale power customers, with the contract rate charged each of them for power, showing that defendant paid for power under its contract one cent per k. w. h. A regular schedule of wholesale power rates was not filed and approved until April 24, 1924. Defendant's contention is that this action on the part of plaintiff established one cent per k. w. h. as the legal rate to be charged defendant until the filing and approval of new rates in accordance with the statute, and that it is entitled to recover the difference between this rate and the rate actually paid.

17 F.(2d)—4

[3, 4] In considering this question, we are confronted with the fact that on this branch of the case both sides moved for a directed verdict. The effect of this was to waive a jury trial and submit all questions of fact as well as of law to the judge. He has found in favor of the plaintiff, and we are powerless to review his finding, unless satisfied, after viewing the evidence in the light most favorable to plaintiff and resolving all controverted questions in its favor, that there was no evidence upon which the finding can be sustained; in other words, unless we think that upon the evidence a verdict should have been directed for the defendant as a matter of law. Lawton v. Carpenter (C. C. A. 4th) 195 F. 362; Sena v. American Turquoise Co., 220 U. S. 497, 501, 31 S. Ct. 488, 55 L. Ed. 559; Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654. We think, however, that the defendant was clearly not entitled to a directed verdict, first, because the filing of the list of wholesale customers with the contract rate paid by each was clearly not the filing of a schedule of rates within the meaning of the act; and, secondly, because there was evidence from which the judge was justified in finding that the amounts paid by defendant were paid voluntarily.

[5] As to the first proposition, it is clear that the filing of the list of wholesale customers, with the rate paid by each, was not the filing or establishment of a schedule of rates, within the meaning of the South Carolina statutes, and that it was filed, not for the purpose of establishing rates for the future, but as information as to rates fixed by contracts entered into in the past. The rate fixed by the contract with defendant was fixed for a limited time, and the contract was notice that it would expire with the contract. It was not a rate made to the public generally, to continue until changed, but was protected as a contract rate only for the life of the contract by the terms of the statute, which provided:

"That nothing contained in this act shall authorize the Railroad Commission to declare any rate, toll, charge or fare, contained in any contract heretofore voluntarily entered into for a term of years by and between any public utility and any person, firm or corporation for the sale and purchase of gas, electricity or other commodity the subject of said contract, to be unreasonable, and noncompensatory, without the consent of both parties to said contract, said rates, tolls, charges and fares are hereby declared, for the life of said contracts, to be reasonable

and compensatory within the meaning of this act." Act March 24, 1922, § 3.

Moreover, it appears that in filing the list of wholesale power customers, with the rates charged them, plaintiff gave notice that these rates were fixed by special contract, and it further appears that the schedule of rates previously filed contained an express provision to this effect. When the contract with defendant expired, the special contract rate ceased to exist, and there was no rate applicable to wholesale customers, unless the schedule filed in 1919 be held to apply to them. If these be held applicable, however, defendant cannot recover anything, for it has paid much less than would have been due under them.

[6] But, even if the rate fixed by the contract be deemed a continuing rate, fixed under the statute, because notice thereof was filed with the commission, defendant cannot recover, for it has paid the rates charged by plaintiff, and there is evidence to support the trial judge's conclusion that it paid them voluntarily. Knudsen-Ferguson Fruit Co. v. Chicago, St. P., M. & O. R. Co. (C. C. A. 7th) 149 F. 973, certiorari denied 204 U. S. 671, 27 S. Ct. 786, 51 L. Ed. 672; Hardaway v. Southern Ry. Co., 90 S. C. 475, 73 S. E. 1020, Ann. Cas. 1913D, 266. See note to 18 L. R. A. (N. S.) 124.

There was no error, and the judgment of the District Court is affirmed.

Affirmed.