## CITY OF HIGH POINT v. DUKE POWER CO.

No. 4759.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

---

Before PARKER, SOPER, and DOBIE, Circuit Judges.

Roy L. Deal, of Winston-Salem, N. C. (G. H. Jones, of High Point, N. C., on the brief), for appellant and cross-appellee.

W. S. O'B. Robinson, Jr., and W. B. McGuire, Jr., both of Charlotte, N. C. (R. M. Robinson, of Greensboro, N. C., on the brief), for appellee and cross-appellant.

PARKER, Circuit Judge.

These are cross appeals in an action instituted by the City of High Point, North Carolina, as plaintiff, against the Duke Power Company, as defendant, to recover over-payments alleged to have been made for electric current furnished by defendant to plaintiff between March 1, 1935 and April 23, 1938. Defendant filed counterclaim to recover for current furnished by it to plaintiff following the last named date. The case was heard before the judge without a jury. He denied recovery to plaintiff and gave judgment for defendant on its counterclaim in the sum of $127,435.94 with interest from April 24, 1939 for electric current furnished plaintiff between April 23, 1938 and April 24, 1939, together with the sum of $5,671.01 for miscellaneous power, not in dispute. Plaintiff complains on this appeal of the denial of its claim of over-payment and of the allowance of interest on the amount allowed defendant on its counterclaim. Defendant complains because recovery was not allowed on its counterclaim on the basis of a higher rate

schedule. The facts relevant to the questions presented are as follows:

The power company and its predecessors in interest had been furnishing electric current to the city for a number of years prior to 1935. It was engaged also in furnishing electric current to manufacturers and others in High Point and vicinity for power purposes. In 1932 it entered into contracts with the city under which the city agreed not to resell power purchased "to any consumer for any one motor in excess of five horsepower capacity." Immediately prior to March 1, 1935, power was being furnished the city pursuant to such contracts under a schedule designated by the power company as schedule 8A.[1] These contracts were terminated by the city as of March 1, 1935 and notice was given the power company that the city intended to purchase current on a "month to month basis upon such terms as may be mutually agreed upon". No terms were agreed upon, but the power company continued to furnish current and the city continued to make monthly payment for same at the rates prescribed by schedule 8A until April 23, 1938. After that date the power company continued to furnish current but the city made no further payments.

Prior to March 1, 1935, the power company filed with the North Carolina Utilities Commission its rate schedule No. 10 as an additional schedule to others on file with the commission. It differed from other schedules in that it contained a demand feature in addition to an energy charge. For customers with a constant demand it offered opportunity for savings; but for customers with an uneven demand schedule 8A was more favorable. The city authorities decided that for two of its contracts schedule 10 was the more favorable and asked that contracts for furnishing current under that schedule be executed by the power company. The company tendered such contracts but included therein the clause against resale of current which had been carried in prior contracts. The city refused to execute the contracts with these provisions and the power company refused to execute same without them. The power company contended that it could not be required to sell power to be resold by the purchaser in competition with its power business and was entitled to provide against such competitive resale in its contracts. The city contended that this position was not open to the power company because it was operating under a franchise which provided that the grantee should not sell electric current in opposition to the city. No settlement of this controversy was reached; but, as stated above, the power company continued to supply current to the city and bill the city for same monthly on the basis of the rates contained in schedule 8A, and the city, until April 23, 1938, continued to make payment for the current so furnished on the basis of these billings.

No protest was made by the city when making the payments under schedule 8A. Suit for recovery of the overpayments was instituted August 19, 1937; but payments under schedule 8A were continued thereafter until April 23, 1938. There was no protest at the time such payments were made and there was no agreement or even notice that they were made subject to the outcome of the suit.

Both schedule 8A and schedule 10 provided that electric current would be supplied at the rates therein specified only in cases where annual contracts were executed by the customer, and no such contracts were executed by the city subsequent to March 1, 1935. At a number of points at which current was received by the city it was advantageous to it to apply the rates prescribed by schedule 8A; and no controversy is presented as to the current delivered at these points. While no contract was executed for delivery of current under schedule 10 at the other two points, it was delivered and accepted at these points for the twelve months' period from April 23, 1938, to April 24, 1939, in no different manner from that which would have been followed if a contract under schedule 10 had been executed. It appears, also, that such contract would have been executed but for the insistence of the power company that the provision limiting the right of resale of current be included therein. The power company was selling current to a number of other municipalities in North Carolina during this period at the rates prescribed by schedule 10 under contracts containing no

---

[1] There were a number of schedules filed by the power company and its predecessors; but the rates in all of them so far as the questions here involved are concerned were the same as that of the power company's schedule 8A. Reference to contracts based on that schedule will include also contracts based on other schedules carrying the same rates.

restrictive provision as to resale; and no resales are shown to have been made by the city during the period which would have been violative of the provision, had a contract containing such provision been executed.

The findings of the court below embraced the foregoing matters and a number of others which, in the view that we take of the case, we need not consider. The judge held that the charges for current delivered between March 1, 1935, and April 23, 1938, were not unlawful or discriminatory and that since payments for same were voluntarily made by the city with knowledge of all the facts, no part thereof could be recovered. With respect to the current delivered between April 23, 1938, and April 24, 1939, he held that, as no contract existed prescribing the rates to be charged therefor, the rates prescribed by schedule 10 should be applied as the reasonable value of the current, and entered judgment for defendant accordingly, with interest from April 24, 1939.

We need not consider whether the power company was within its rights in insisting upon the incorporation in the contract of the clause restricting the resale of current, or whether the provisions of the franchise forbade it to sell current for power purposes in competition with the city. All arguments addressed to these questions become moot in view of the fact that no contract of any sort was executed and consequently no rights arising out of any such contracts are here involved. On one branch of the case, the question is whether rates in excess of legal rates were collected by the power company from the city under such circumstances as would warrant the recovery of the overcharge; on the other branch, the question is what is the reasonable rate to apply for current for which no payment has been made.

On the first question, we cannot say that the city was entitled as a matter of law to the rates specified in schedule 10; for the rates of schedule 8A as well as the rates of schedule 10 were legal rates. Which were legally applicable depended upon the contract of the parties; and, while the city elected to take current under schedule 10 and the failure to secure a contract thereunder was due to the action of the power company in insisting upon inserting the resale clause in the contract, no contract was in fact entered into. In the absence of contract, the power company continued to bill the city monthly in accordance with the rates prescribed by schedule 8A and the city continued to make payment in accordance with the bills so rendered. The payments made without protest, on this month to month basis, certainly constituted, as to each month, an election to pay on the basis of schedule 8A and a waiver, as to that month, of the right to any contract under schedule 10.

And there is another ground upon which the recovery by the city of the alleged overcharges must be denied. Even if it be conceded that the rates of schedule 10 were the ones properly applicable, the payments under schedule 8A were made voluntarily and without protest, with full knowledge of the facts, and no part of same can be recovered for that reason. Swift & Co. v. Columbia Ry. Gas & Elec. Co., 4 Cir., 17 F.2d 46, 50, 51 A.L.R. 983; Knudsen-Ferguson Co. v. Chicago, etc., R. Co., 7 Cir., 149 F. 973; Pardue v. Absher, 174 N.C. 676, 94 S.E. 414; Bernhardt v. Carolina & N. W. R. Co., 135 N.C. 258, 47 S.E. 427; Brummitt v. McGuire, 107 N.C. 351, 12 S.E. 191. There is nothing whatever in the record to sustain the contention that these payments were made under legal coercion of any sort, and the judge below properly found to the contrary. See finding No. 38.

The city contends that the above rule is not applicable to it because it is a municipal corporation. No such distinction is recognized by the law of North Carolina, which denies the recovery of payments voluntarily made, without mistake of fact, to public corporations as well as to private individuals. Commissioners of Catawba County v. Setzer, 70 N.C. 426; Commissioners of Macon v. Commissioners of Jackson County, 75 N.C. 240. This is in accord with the current of authority, although some states hold to the contrary. 48 C.J. 758; note 63 A.L.R. at 1354. It is to be noted, also, that the purchase and sale of power by the city was an undertaking carried on in its private and proprietary capacity. Holmes v. Fayetteville, 197 N.C. 740, 150 S.E. 624; Asbury v. Albemarle, 162 N.C. 247, 78 S.E. 146, 44 L.R.A.,N.S., 1189; 43 C.J. 420. And it has been held, and quite properly we think, that even in jurisdictions where a municipal corporation is permitted to recover voluntary payments, the rule will not be applied in case of payments made in its private and proprietary capacity. Chrysler Light & Power

Co. v. City of Belfield, 58 N.D. 33, 224 N. W. 871, 63 A.L.R. 1337.

In the case at bar not only was the city acting as an ordinary private corporation in the purchase and sale of electric current, but it is stipulated that, after paying the rates charged by the power company, it made a profit thereon in the year 1938 exceeding $200,000. To hold, under such circumstances, that it was not bound by the rules governing private corporations in the transaction of their business would be without justification and in conflict with well settled law. 43 C.J. 183; Tuttle Bros. & Bruce v. Cedar Rapids, 8 Cir., 176 F. 86; Omaha Water Co. v. City of Omaha, 8 Cir., 147 F. 1, 12 L.R.A.,N.S., 736, 8 Ann. Cas. 614; Illinois Trust & Savings Bank v. City of Arkansas City, 8 Cir., 76 F. 271, 282, 34 L.R.A. 518. The rule applicable was well stated by the late Judge Walter H. Sanborn in the case last cited, as follows:

"A city has two classes of powers,—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it is governed by the rule here invoked. In their exercise it is ruling its people and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation."

And see Atlantic & N. C. R. R. v. Commissioners of Carteret County, 75 N.C. 474; Davis v. North State Veneer Corporation, 200 N.C. 263, 156 S.E. 859; Town of Warrenton v. Warren County, 215 N.C. 342, 2 S.E.2d 463.

As to the current furnished between April 23, 1938, and April 24, 1939, there was no contract and no payments. It was for the court, therefore, to determine the reasonable value of such current. We think that the court very properly fixed the valuation on the basis of the rates pre-scribed by schedule 10. The power company had evidenced its willingness to apply these rates if the city would agree not to resell the current to power customers; and during the year involved there is nothing to indicate that such resales had been made. In as much as the power company was demanding payment at a higher rate, however, and as it had been paid at the higher rate by the voluntary payments made between March 1, 1935, and April 23, 1938, we think that the court was justified in not allowing interest on the amount of the monthly deliveries except from the end of the year. It is clear that the city has no ground of complaint with regard thereto; for it was for the court to say what was the reasonable value of the current furnished and to include in the judgment interest from the time when it should have been paid. Kinston Mfg. Co. v. Freeman, 4 Cir., 247 F. 54, 57; Thomas v. Piedmont Realty & Development Co., 195 N.C. 591, 143 S.E. 144; Bryant v. Southern Box & Lumber Co., 192 N.C. 607, 135 S.E. 531.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.