HICKMAN et al. v. CABOT.

(Circuit Court of Appeals, Fourth Circuit. December 20, 1910.)

No. 1,003.

CONTRACTS (§ 156*)—CONSTRUCTION—EJUSDEM GENERIS—"OTHER CAUSE."

Defendant contracted to use natural gas from plaintiffs' wells for a specified time at specified prices. the contract providing that, if by reason of fire, explosion, or other cause defendant's factory should be closed down, plaintiffs might during the time dispose of gas elsewhere, and, if the nonuse extended over a month, plaintiffs should have the right to cancel the contract. *Held,* that the words "other cause," following "fire and explosion," should be construed to mean other cause similar to fire or explosion under the rule of ejusdem generis, and did not therefore

entitle defendant to shut down his factory for any cause whatsoever without a liability for breach of such contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 737; Dec. Dig. § 156.*

For other definitions, see Words and Phrases, vol. 6, pp. 5070–5102; vol. 8, pp. 7741–7743.]

In Error to the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

Action by William Floyd Hickman and others against Godfrey L. Cabot. Judgment for defendant, and plaintiffs bring error. Reversed.

William Beard, for plaintiffs in error.

B. M. Ambler (Van Winkle & Ambler, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The plaintiffs in error here are all citizens of West Virginia. They were plaintiffs below. They will be called plaintiffs. The defendant in error is a citizen of Massachusetts. He was the defendant below, and will be so referred to in this opinion. The plaintiffs had a gas well or wells. They wanted to sell their gas. The defendant had a carbon factory. All agreed that the defendant should construct a pipe line from his factory to plaintiffs' well, that he should take about 1,200,000 feet of gas a day, and should pay plaintiffs 2 cents a 1,000 feet for it. The plaintiffs were to care for the wells and keep them in good order and free from water, so far as this should be feasible. The agreement was to bind the parties, their heirs, personal representatives, and assigns for a term of three years, and thereafter until terminated by one month's notice from either party to the other. In case all the wells on plaintiffs' land should not be sufficient to furnish the required amount of gas, the defendant might buy elsewhere.

The contract between the parties also contained the following paragraph:

"If by reason of fire, explosion or other cause, the factory of [the defendant] shall be closed down, the [plaintiffs] may during such time, dispose of the gas elsewhere, and if such nonuse extends over one month, the [plaintiffs] shall have the right to cancel the contract. No claims for damages shall be made by the [plaintiffs] for nonuse of the gas, by reason of the shutting down of the factory nor by the [defendant] for the failure to supply, due to natural causes."

The defendant constructed his pipe line, and connected it with the well of the plaintiffs. After taking the gas for something like 30 days in all, he shut down his factory, and disconnected his pipe line from plaintiffs' well. Some months later the plaintiffs brought suit, among other things, for the $24 a day which the defendant would have owed them had he taken 1,200,000 feet of gas from them at the price of 2 cents per 1,000 feet.

There were many controverted questions raised upon the trial. There are a number of exceptions and of assignments of error. In

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

our view, we need consider none of these, except such as relate to the construction placed by the court below upon the paragraph of the contract between the parties, which provided what their respective right should be in the event that the factory should be shut down by "reason of fire, explosion or other cause." That clause has already been quoted in full.

The court instructed the jury that:

"The plaintiffs are not entitled to recover any damages or money from the defendant, by reason of his shutting down his factory. Cabot had a right to shut down his factory under the contract without liability to the plaintiffs on that account."

The learned judge further told the jury that the defendant, "if he operated his carbon factory, would have to take the gas tendered by the plaintiffs to the extent and subject to the conditions prescribed by the contract. If, however, he did not operate his factory, but determined to wholly shut it down, he had the right to do so, and by the terms of the contract no claims for damage could be made for the nonuse of the gas by the plaintiffs while the factory was so shut down; they, on their part, having the right to sell the gas while the factory was shut down and to cancel the contract, if the nonuse by Cabot of the gas extended beyond 30 days." Under this construction of the contract, the defendant by operating his factory 1 day in every 30 could have for 3 years prevented the plaintiffs from canceling the contract. It is true that they could have sold their gas elsewhere during the other 29 days, provided they could have found some one who was willing to take it whenever the defendant did not want it, without either such purchaser or the plaintiffs ever being able to know in advance when and for how long the defendant would want it. It does not seem probable that the parties could have intended to make such a bargain. Moreover, if the construction placed by the court upon the contract is correct, there was no possible reason for the parties to have said anything about fire or explosion. As the agreement was construed below, it means the same thing that it would have meant had it read "if by reason of any cause" the factory shall be closed down, instead of reading as it does "if by reason of fire, explosion or other cause." To our mind the words "other cause" must be limited to causes of the same general nature as are fire and explosion, the causes of shutting down specially mentioned. They cannot be held to include a shutting down directed by the defendant purely for his own profit or convenience. We fully agree with the principle cited by the counsel for the defendant from United States v. Mescall, 215 U. S. 31, 30 Sup. Ct. 19, 54 L. Ed. 77, that Lord Tenderden's rule is one of construction only. "It is not a cast iron rule, it does not override all other rules of construction, and is never applied to defeat the real purpose * * * as that purpose may be gathered from the whole instrument." As we read the entire contract, it seems clear to us that the parties did not intend that Cabot reserved the right to refuse to take gas whenever for any purpose of his own it seemed to him desirable to shut down the factory. The contention that fire and explosion exhaust the whole genus, so that "other cause" must refer to

something radically unlike, does not seem persuasive. We imagine that wind or water would have been regarded by the parties as causes which from their standpoint were of the same kind as fire and explosion. It is clear to us that they did not regard the purely voluntary act of the defendant as one of the other causes which, like fire and explosion, would justify the defendant in refusing to take gas.

To hold otherwise would, by rendering the words "fire" and "explosion" superfluous, offend against the other rule of construction approved by the Supreme Court and cited by the defendant, viz., that an interpretation is incorrect that would obliterate one portion of a contract in order to enforce another part thereof. Burdon Company v. Payne, 167 U. S. 127, 17 Sup. Ct. 754, 42 L. Ed. 105. The phrase "other causes" has usually received a construction which confines it to "other causes" of the same general nature as those specifically mentioned. State v. McGarry, 21 Wis. 496, 498; Stemmer v. Scottish Union National Insurance Company, 33 Or. 65, 49 Pac. 588, 53 Pac. 498. King v. Thompson, 87 Pa. 365, 369, 30 Am. Rep. 364.

The learned counsel for the defendant argues that the "shutting down" spoken of in the sentence, "No claims for damages shall be made by the" plaintiffs "for nonuse of the gas by reason of the shutting down of the factory, nor by the" defendant "for the failure to supply due to natural causes," is not limited to the kinds of shutting down referred to in the preceding sentence, "If by reason of fire, explosion, or other cause, the factory of the" defendant "shall be shut down, the" plaintiffs "may during such time dispose of the gas elsewhere; and if such nonuse extends over one month, the said" plaintiffs "shall have the right to cancel the contract." The contention is ingenious, but to our minds not convincing. Indeed, the employment of the phrase "natural causes" in the sentence limiting the liability of the plaintiffs is at least suggestive that the parties felt that "fire, explosion, or other cause" mentioned in the other sentence were of the same general character as natural causes, to the extent at least that in neither case were they under the control of the parties.

From the fact that we feel constrained to put another construction upon this material provision of the contract from that which commended itself to the judge below, it follows that the judgment must be reversed, and the case sent back for a new trial.

Reversed.