## MILLER v. MARYLAND CASUALTY CO.

(Circuit Court of Appeals, Third Circuit. January 24, 1912.)

No. 1,481.

1. INSURANCE (§ 668*)—ACCIDENT POLICY—VALIDITY.

An accident insurance agent, having insured M. against accidents for a number of years in a company whose risks were thereafter assumed by defendant, entered defendant's employment as a general agent, and thereafter, on his countersignature, the policies of defendant became effective and were delivered. M.'s previous policies had insured him against accident, but not against illness, and had contained a warranty that he had never received indemnity for any accident. M. had suffered an operation for chronic appendicitis for which he had received indemnity from another casualty company for the time he was absent from work, and the agent, with knowledge of these facts, desiring to issue a policy in defendant company, insuring against "accident" and "illness," wrote out an application by which M. was made to state that he had never received indemnity for any accident or illness, and on the changed application wrote out a recommendation of the risk, and a policy was issued to take the place of the former policy in defendant reinsurance company. It did not appear that M. had any knowledge of this alteration, or that he authorized it. *Held* that, since the act of the agent related to the making of the contract in the first instance, it was not avoided as a matter of law by a provision that an agent had no authority to change the policy, or to waive any of its provisions, etc., and that the same was not avoided by the misstatement as a matter of law.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*]

2. INSURANCE (§ 251*)—WARRANTIES—MISREPRESENTATION.

Where an accident policy was countersigned and delivered in Pennsylvania, it was a Pennsylvania contract and subject to Act Pa. June 23, 1885 (P. L. 134), providing that no misrepresentation or untrue statement in the application made in good faith by the applicant shall forfeit the policy, unless with reference to a matter material to the risk.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 251.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INSURANCE (§ 268*)—"LIFE INSURANCE"—STATUTES—ACCIDENT POLICY.

Since the term "life insurance" includes accident policies, Act Pa.. June 23, 1885 (P. L. 134), providing that when a policy of life insurance contains a warranty of the truth of the answers contained in the application no untrue statement made in good faith shall effect a forfeiture, unless the untrue statement relates to some matter material to the risk, is applicable to accident insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 568, 569; Dec. Dig. § 268.*

For other definitions, see Words and Phrases, vol. 5, pp. 4154–4156; vol. 8, p. 7707.]

4. INSURANCE (§ 668*)—ACCIDENT POLICY—APPLICATION—CONSTRUCTION—"ILLNESS"—QUESTION FOR JURY.

An application for an accident policy warranted that insured had never received indemnity for any accident or "illness," except a specified sum for a sprained ankle. He had in fact previously had an operation for chronic appendicitis for which he had received from another insurance company an indemnity of $225 from the time he was absent from his work. *Held*, that since the term "illness" is defined as a disorder of health, or sickness, meaning a disease, or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which did not tend to undermine or weaken insured's constitution, whether the operation for chronic appendicitis was an illness within such definition was for the jury.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*

For other definitions, see Words and Phrases, vol. 4, pp. 3390, 3391.]

5. INSURANCE (§ 256*)—ACCIDENT POLICY—"MATERIAL TO RISK."

Whether a misrepresentation is material to the risk essential to make the same available as a defense to a policy, as provided by Act Pa. June 23, 1885 (P. L. 134), depends on whether it was of such substantial importance that the insurer, but for the misrepresentation, would not have made the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 540, 549; Dec. Dig. § 256.*

For other definitions, see Words and Phrases, vol. 5, p. 4404.

Accident insurance—risk and causes of loss, see notes to National Accident Society of City of New York v. Dolph, 38 C. C. A. 3; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 126.]

6. INSURANCE (§ 668*)—ACCIDENT POLICY—APPLICATION—MISREPRESENTATION—MATERIALITY—QUESTION FOR JURY.

Where a general agent for defendant's accident and health insurance company with knowledge that decedent had suffered an operation for chronic appendicitis, made out an application for accident and health insurance, and incorrectly stated that decedent had never received indemnity for any accident or illness, except for a sprained ankle, and then indorsed on the application a recommendation of the risk, whether such misrepresentation was material to the risk, so as to make the same available as a defense to an action on the policy, as required by Act Pa. June 23, 1885 (P. L. 134), was for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1735–1738; Dec. Dig. § 668.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by Sophia Y. Miller against the Maryland Casualty Company. Judgment for defendant, and plaintiff brings error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John S. Weller, for plaintiff in error.
Gordon & Smith, for defendant in error.
Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Sophia Y. Miller, a citizen of Pennsylvania, the beneficiary in an accident indemnity insurance policy issued to her husband, Samuel S. Miller, by the Maryland Casualty Company, a corporation of Maryland, brought suit against that company to recover indemnity for his death. The policy in question indemnified against "bodily injuries * * * effected directly and independently of all other causes through external, violent and accidental means." After the proofs were in, the court gave binding instructions to the jury to find for the defendant. To its action in so doing and to several of its rulings during the trial, error is now assigned by the plaintiff. The argument has taken a wide range, and as we have before us the entire testimony, and also the offers to prove that were excluded, we have, in pursuance of our rule 11, and with a view to affording light on a retrial, not restricted ourselves to the assignments where we felt there was plain error.

[1] The offers excluded, taken in connection with the proof received, showed or tended to show the following facts: Samuel S. Miller, a conductor on the Pennsylvania Railroad, had since 1897 taken out policies issued by the Central Accident Company of Pittsburgh, which insured against accident but not against illness. Since 1902, one Elliott was agent of said company and had entire charge of this risk. In 1903, Miller had chronic appendicitis and his appendix was removed. He received from the Philadelphia Casualty Company, in which also he was insured, an indemnity of $225 for the time he was absent from his work. These facts were all known to Elliott, who thereafter continued to issue to him policies in the Central Company and collect his yearly premiums. In December, 1907, the Maryland Casualty Company, the present defendant, bought all the risks of the Central Accident Company, and by a written agreement agreed to renew, inter alia, Miller's policy. With this purchase Elliott also passed over and went into the employment of the Maryland Company as its general agent, and thereafter, on his counter-signed signature, the policies of the defendant company became effective and were delivered by him. The policy of Miller in the Central Company was thereafter renewed by Elliott the same as before by indorsements on the policy, until September 14, 1909, when it was canceled by Elliott, and he then issued the policy of the defendant company here in suit, which insured against both illness and accidents. By indorsement on the latter policy it was stated:

"This policy issued in lieu of policy No. S. A. 241,583 C. R. 108, 221."

In point of fact, no written application for this policy of the defendant was made or signed by Miller, nor was it shown that he had any knowledge of the issue thereof by the company further than that to be inferred from the fact that such policy was found among his effects after his death. The entire matter was apparently trans-

acted by Elliott alone, who, without the knowledge of Miller, made a copy of Miller's prior application on which the Central policies had issued, which policy, it will be observed, insured against accidents alone and not against illness, while the policy of the defendant was against both illness and accident. In doing so Elliott changed the answer on the Central policy, which read, "I have never received indemnity for any accident," so as to read, "I have never received indemnity for any accident or illness." To such changed copy of Miller's original application, Elliott subscribed the statement:

"I recommend and approve the risk, and state the policy was filled out as above.                                    W. O. II. Elliott, General Agent."

On the basis of such application of Elliott, its own general agent, and not on any application made by Miller, the defendant company, by its president and secretary, issued the policy in suit, which by indorsement thereon provided that:

"By this indorsement, the accumulations which accrued under policy No. S. A. 241,583, issued for a principal sum of $5,000, and dated September 14, 1908, are hereby added to this policy."

The premium for the policy was paid by Miller in due course. In the warranties thus copied by Elliott and made the basis of the policy in suit was this statement:

"(10) I have never received indemnity for any accident or illness except as herein stated, $110.71 from this company, July 13, 1909, for sprained ankle."

And:

"I have no accident or health policy, nor have I applied for any in this or any other company, except as herein stated, Philadelphia Casualty Company, $2,500."

The policy further provided:

"(29) An agent has no authority to change this policy, or to waive any of its provisions (nor shall notice to any agent or knowledge of his or any other person be held to effect a waiver or change in this policy or any part of it)."

If, however, the application on the policy in suit was not made by Miller, but was the act of the company itself through Elliott, its general agent, then Zimmer v. Accident Ins. Co., 207 Pa. 472, 56 Atl. 1003, applies. It was there said:

"It does not appear that Zimmer ever saw the pretended copy of the application on the back of the policy, for it does not appear that he ever saw the policy itself; but, if he had seen it, and it had been delivered to him, it cannot be said as a matter of law that, in anticipation of a fraud upon the part of the company, there was any absolute duty imposed upon him to read his policy when he received it. Kister v. Insurance Co., 128 Pa. 553 [18 Atl. 447, 5 L. R. A. 646, 15 Am. St. Rep. 696]. He had a right to assume, without reading it, that, as an honest insurance company, the appellant had observed the law passed for his protection by attaching or indorsing a correct copy of the application; but, if he had seen and handled the policy, he found nothing on it committing him or his beneficiary to the substitution of an incorrect for a correct copy of the application. Not having committed himself to the words, 'I accept this as a copy of my application, but I agree that the original shall be admitted as the correct ap-

plication if copy varies therefrom,' no importance can be attached to them. They amount at most to but an implied request by the company that he would agree to its attempt to evade the law."

The operation in question was for chronic appendicitis, and the testimony tended to show that the indemnity paid to Miller by the Philadelphia Casualty Company had not been for illness, but from disability resulting from the operation, the physician saying:

"His confinement to bed, was, of course, due to a surgical operation. He was going around up to the time I operated on him, and his confinement to bed was produced by the operation."

There was no evidence that Miller's health was in any way subsequently affected by such chronic appendicitis or the operation, nor had either of them any connection with his death. Six years later, Miller, while serving as passenger conductor on the Pennsylvania Railroad, was in a railroad accident on November 30, 1909, and it was alleged, and the evidence tended to show, that he there sustained a heart lesion which caused his death on December 20th following.

Under such facts, is a court justified in holding, as a matter of law, that the case was with the defendant? We think not. The testimony as to the knowledge of Elliott, the general and countersigning agent of the defendant, of the facts in reference to the operation and the indemnity, and the fact that he copied the application on the old policy in another company and changed its wording so as to change the scope of the warranties without Miller's knowledge, and used it as a basis for the issue of a policy in the second company, were matters which went to the inception of the contract and as to whether Miller had ever made such a warranty. The facts of the present case are much stronger than in Dulany v. Fidelity Co., 106 Md. 34, 66 Atl. 616, where, in passing on a policy containing a provision similar to the one in the present policy, and quoted above, it was said:

"The policy before us contains the usual provision that no agent has power to change it or waive any of its terms, but this court has several times decided that such a clause must be construed to relate to the provisions of the contract itself after it has gone into effect and not to apply to the conditions which relate to the inception of the contract when it appears that the agent has delivered the policy and received the premiums with full knowledge of the actual situation. Hartford Fire Ins. Co. v. Keating, 86 Md. 146 [38 Atl. 29, 63 Am. St. Rep. 499]; Mallette v. British As. Co., 91 Md. 484 [46 Atl. 1005]. The same doctrine has been announced by the United States Supreme Court in N. J. Mut. Life Ins. Co. v. Baker, 94 U. S. 610 [24 L. Ed. 268], and Insurance Co. v. Mahone, 88 U. S. 152 [22 L. Ed. 593], and by many of the courts of other states in the cases collected under note 5 on page 943 of 2d Ed. of A. & E. Encycl. of Law. If the actual facts were explained by the assured to the agent of the company through whom the policy was delivered to him and the premium collected, and that agent undertook to determine whether the facts were material to the risk and wrote or instructed the appellant to write the answer appearing on the application, the company would be estopped to set up those facts to defeat an action to recover on the policy."

In the face of such proofs, for we must, for present purposes, consider the rejected offers as proven, it would be error for a court to

itself hold that as a matter of law the policy was void. But the case did not end there.

[2] In our opinion, and we so hold, the Pennsylvania Act of June 23, 1885 (P. L. 134), which provides:

"That hereafter whenever the application for a policy of life insurance contains a clause or warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk"—

applies to the accident policy here in suit. The policy in question, being countersigned and delivered in Pennsylvania, was a Pennsylvania contract. While the case of Zimmer v. Central Co., supra, construed another insurance statute, yet, as that statute and the one before us are in pari materia, we consider that case evidences the views of the Supreme Court of Pennsylvania on the scope of such insurance legislation. Moreover, as the act of 1885 was passed after that court had, in Pickett v. Insurance Co., 144 Pa. 79, 22 Atl. 871, 13 L. R. A. 661, 27 Am. St. Rep. 618, held that the term "life insurance" in the act of 1881 (Act May 11, 1881 [P. L. 20]) covered accident policies, it is reasonable to suppose that the Legislature by its subsequent use in the act of 1885 of the words "life insurance" meant to cover accident policies also.

[3] For these reasons, and with a view to harmonizing state and federal decisions and producing uniformity in the Pennsylvania system of insurance, we hold the act of 1885 is applicable to accident policies. Support of this conclusion is found in Logan v. Fidelity Co., 146 Mo. 114, 47 S. W. 948; Maryland v. Gehrmann, 96 Md. 634, 54 Atl. 678; Dulany v. Fidelity & Casualty Co., 106 Md. 17, 66 Atl. 614: Cook on Life Insurance, § 2; and McClain v. Provident Sav. Life Assur. Soc., 110 Fed. 80, 49 C. C. A. 31, where we said:

"In extending the judicial power of the United States to controversies between citizens of different states, the only purpose indicated by the Constitution was to provide another forum than that of the state, not another law than that of the state. In this case the court below was exercising a jurisdiction concurrent with that of the courts of the state of Pennsylvania. It was administering the law of that state and was as much bound by its statute and common law and its declared public policies as would be the state courts in a like case."

[4] The Pennsylvania statute, then, applying to this accident policy, did the alleged misrepresentation relate to some matter material to the risk? Assuming for present purposes, that this warranty, "I have never received indemnity for any accident or illness, except as herein stated, $110.71, from this company July 13, 1909, for sprained ankle," was made by Miller, two questions arise: First, was it untrue? And, second, was it material? In point of fact, Miller, in 1903, had had chronic appendicitis. He was operated on therefor, and after the operation remained in bed some time, for which he was paid indemnity benefits of $225 by the Philadelphia Casualty Company. Under these proofs, it was a question of fact, and therefore

to be passed on by a jury, whether the statement did misrepresent or was false. Chronic is distinguished from acute appendicitis. In the former case. the removal of the appendix, while it may be beneficial or desirable, is not immediately imperative. The condition of acute appendicitis is fittingly described as an illness; but chronic appendicitis is not necessarily an illness in common speech, and therefore, when a man is operated upon therefor, it does not follow that, when he remains in bed after such an operation, his condition is necessarily and only described as that of illness. A broken limb, an amputation, the removal of a growth, an optical or aural operation may be followed by the patient remaining in bed; but such cessation from physical activity does not necessarily imply illness in the common acceptation of the word. In such common acceptation illness is ordinarily associated with disease, with sickness, with ill health. In Supreme Lodge v. Lapp, 74 S. W. 656, 25 Ky. Law Rep. 74, Webster's definition, viz., "illness is defined as a disorder of health or sickness," is adopted. In Billings v. Metropolitan Co., 70 Vt. 482, 41 Atl. 518, it is said:

Illness "means a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously and not the mere temporary indisposition which does not tend to undermine or weaken the constitution of the insured."

Moreover, it must not be overlooked that the policy here in suit itself recognizes the distinction between indemnity for illness and indemnity for disability, for clause 18 provides:

"If the insured shall become entitled to indemnity for disability on account of accidental injuries, the company shall not for the same period of time be liable for any disability on account of illness."

So also, it will be observed, the words "accident or illness," having been selected by the company itself, any ambiguity that may arise by reason thereof is to be resolved against the company.

"It is its own language which the court is invited to interpret. and it is both reasonable and just that its own words should be construed most strongly against itself." National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563.

From this it would seem that whether the statement was not literally true was itself a debatable question. And on the question whether it was material. the conduct of Elliott was to be considered. The presumptions are that he, a general agent of the company, acted in good faith when, with a full knowledge of the indemnity received by Miller, he indorsed on the application, "I recommend and approve the risk." When then he had for six successive years, with such knowledge, insured Miller and received his premiums, a jury might well consider such conduct on the part of an experienced general agent threw light on the question whether the fact omitted was material.

[5] While it is, of course, the law that, where an answer is manifestly false and relates to some matter palpably material to the risk, a court itself must so hold (Lutz v. Metropolitan, 186 Pa. 527,

40 Atl. 1104; March v. Metropolitan, 186 Pa. 629, 40 Atl. 1100, 65 Am. St. Rep. 887), it is also to be noted that this act was intended to strike down literal warranties so far as they were used to enforce actually immaterial matters (Hermany v. Life Association, 151 Pa. 17, 24 Atl. 1064); the test being whether the misrepresentation was material to the risk, whether it was of such substantial importance as to lead the insurer not to contract. Now, in view of Elliott, the general agent, knowing the fact of prior indemnity having been received, the question will naturally arise: Did the omission of the insured to restate it preclude or affect the issue of the policy?

"A fact is material to the risk, when, if known to the underwriter, it would have caused him to refuse the risk." McCaffrey v. Knights of Columbus, 213 Pa. 612, 63 Atl. 189; Penn v. Mechanics, 73 Fed. 653, 19 C. C. A. 316, 38 L. R. A. 33, 70; Young v. American, 228 Pa. 373, 77 Atl. 623.

And as bearing on the question of the materiality of one of the facts alleged to have been concealed, namely, the fact that Miller's appendix had been removed, it was to be considered that such removal, instead of increasing the company's risk, actually relieved it from an obligation it assumed by the policy, namely, indemnity against operation for appendicitis. So regard is to be given to the general belief that the removal of the appendix is beneficial and to the fact that this man's had been so removed six years before, and with no consequent ill effects.

[6] Under all the proofs and offers in this case, the most that can be said of it is that the facts and attendant circumstances are such that different men might reasonably draw different inferences therefrom, and, such being the case, the case was for a jury, not for a court, to decide. Hermany v. Life Association, supra; Keiper v. Equitable (C. C.) 159 Fed. 206; Dulaney v. Fidelity Co., supra; and Lutz v. Metropolitan, supra, where, while the court held the materiality under the facts of that case was for the court, it yet held:

"Ordinarily, questions of good faith and materiality are for the jury, and where it is doubtful whether the matter was material, the question of materiality must be submitted to the jury."

The judgment below is therefore reversed, with a venire de novo.