**WEEK v. HELVERING, Commissioner of Internal Revenue.**[*]

**MOEN v. SAME.**

**WEEK et al. v. SAME.**

**No. 7201.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 5, 1934.

Fred B. Morrill, of Spokane, Wash., for appellants.

Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Edmund R. Week and his brother, John Arthur Week, between the years 1904 and

[*]Rehearing denied April 13, 1934.

1911 purchased 158.6 acres on the Spokane river and acquired in addition thereto riparian and flowage rights on each side of the river for a distance of about four and one-half miles; the purpose being to acquire a reservoir site for the development of electric power. In 1923 the property was sold for $200,000. The Commissioner fixed the gain for the year 1923 at $156,745.40, being the difference between the sale price of $200,000 and the actual cost of the property, $43,254.-50. This gain he divided equally between Edmund R. Week and the estate of John Arthur Week who had died after the property was sold. From this proposed deficiency the petitioners appealed to the Board of Tax Appeals, which sustained the finding of the Commissioner.

The sole question presented on the appeal is whether or not the fair market value of the property in question on March 1, 1913 exceeded its cost. The controlling statute in that regard is the Revenue Act of 1921, c. 136, 42 Stat. 227:

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property. * * *

"(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a); but—

"(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market price or value."

█ The burden of establishing that the fair market value of the property exceeded its cost was upon the petitioners. The determination of the Commissioner fixing the deduction to be applied to the selling price to determine the gain was prima facie correct. The question involved is one of fact. The determination of the Board of Tax Appeals on a question of fact is conclusive upon us. We have no power to interfere with that determination. The only question we can consider is whether or not there is substantial evidence to support the conclusion of the Board of Tax Appeals. In addition to proof of the cost of the reservoir site to the petitioners and the prima facie presumption in favor of the correctness of the determination of

market value by the Commissioner, evidence was introduced on behalf of the Commissioner to the effect that the reservoir site was worthless for that purpose.

Eugene Logan, a consulting engineer who had been employed for nineteen years by a power company operating along the Spokane river, testified that in his opinion the overflow rights purchased by the petitioners were worthless and that the 158 acres of land purchased for the reservoir site was worth little in excess of its maximum value for farm land.

R. K. Tiffany, hydraulic engineer with wide experience, who had been employed by the government in the Reclamation Service from 1910 to 1920 and had been state superintendent of hydraulics for the state of Washington from 1925 to 1930, testified that in his opinion the site was not a commercially feasible power site.

Joseph Jacobs, a civil engineer who graduated as such in 1889 and had been intimately acquainted with the Spokane Valley District since 1905, and who had examined the reservoir site in question, testified that he would not recommend the site in question as a power site and that in his opinion the site had no fair market value as a power site.

David C. Henny, a civil engineer who graduated in 1881, and who had been supervising engineer of the United States Reclamation Service for the Pacific District, including the state of Washington, and who had wide experience in the Department of Irrigation projects, and who was at the time of testifying a member of the examining board of the Hoover Dam and Power Development, testified that in his opinion the proposed site was not commercially feasible as a power site; that in his opinion the site had no market value as a power site.

This testimony is amply sufficient to support the decision of the Board of Tax Appeals on the question of value. It should be stated, perhaps, that the controversy as to value and the difference between the testimony of the petitioners and the government largely centered upon the question as to whether or not the site in question was a feasible reservoir site. The opinion of the government engineers that it was not a feasible reservoir site was based upon the proposition that seepage along the banks of the river and at the site of the dam would be very great and that the expenditures necessary to reduce the seepage to a reasonable amount would render the project commercially inadvisable because too expensive with relation to the amount of power to be developed.

A discussion of the evidence of petitioners would be valueless because of the fact that the power to determine the controversy resides in the Board of Tax Appeals and a discussion of the evidence might give the impression that the matter was one for our consideration, although it has been universally held otherwise.

The petitioners made sixteen assignments of error. These assignments, with one exception, all relate to the error of the Board of Tax Appeals in deciding the case in favor of the Commissioner. The fourth assignment, with reference to the error in admitting evidence over the objection of the appellant, does not conform to our rule 11 and will not be considered.

Order affirmed.