## LYMAN et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 3097.
Circuit Court of Appeals, First Circuit.
May 23, 1936.

Fred J. Johnson, of Boston, Mass. (Amos L. Taylor and Adams & Blinn, all of Boston, Mass., on the brief), for petitioners for review.

J. Louis Monarch, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals entered June 6, 1935, and involving estate taxes to the amount of $4,657.91. The statute involved is chapter 27, 44 Stat. 9, the Revenue Act of 1926.

Section 302 of that act provides that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real and personal, tangible or intangible, wherever situated.

Section 303 provides: "For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) * * * losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise." 26 U.S.C.A. § 412, note.

Article 13 of Treasury Regulation 70 promulgated under the Revenue Act of 1926, provides:

"(1) General.—The value of all property includable in the gross estate is the fair market value thereof at the time of the decedent's death. The fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. Where the property is sold within a reasonable period after the decedent's death, and it is shown that the selling price reflects the fair market value thereof as of the date of decedent's death, the selling price will be accepted. Neither depreciation nor appreciation in value subsequent to the date of decedent's death will be considered. All relevant facts and elements of value should be considered in every case. * * *

"(3) Stocks and bonds.—The value of stocks and bonds listed upon a stock exchange should be determined by taking the mean between the highest and lowest quoted selling prices upon the date of death. If the decedent died on a Sunday or holiday, the transaction of the next previous business day will govern. If there were no sales on the date of death, the values should be determined by taking the mean between the highest and lowest sales upon the nearest date either before or after the date of death, if within a reasonable period. If the security is listed upon more than one exchange, the records of the principal exchange should be employed. In valuing listed stocks and bonds the executor should observe care to consult accurate records to obtain values as of the date of death."

The facts out of which the issues arise are as follows: The petitioners are the executors of the estate of Jesse P. Lyman, who died September 14, 1931. In filing the estate tax return they set up two sets of values for the securities listed therein. One set represented the quoted market values of the securities on the date of the death of the decedent and were substantially the same values as were adopted by the executors and set forth in the inventory filed in the probate court.

The second set represented values which the executors contend more accurately reflect the fair market values of the securities at the date of death, as provided in article 13. The difference between the market values as shown in the first set and the values contended for by the executors as shown in the second set is $254,290.86, which sum the petitioners contend should be either excluded from the gross estate or allowed as a loss incurred during the settlement of the estate arising from "fires,

storms, shipwreck, *or other casualty*," and herein lies the main contention between the parties.

At the date of death of the decedent nearly all his assets were pledged with different banks and brokerage houses, and, owing to the depreciation of their market value, they were sold by the pledgees for a sum which was $266,461.47 less than the value at which they were returned by the executors for estate tax purposes.

■ In auditing the estate tax return filed by the executors, the Commissioner adopted the market values of the securities on the date of the death of the decedent, and determined the deficiency resulting therefrom. The Board of Tax Appeals found as a fact that the value of the gross estate was $1,960,002.16, that the estate was entitled to a deduction of $1,756,054.35, and that the net estate was $203,947.81, and affirmed the deficiency found by the Commissioner.

The Board of Tax Appeals also found as a fact that the values of the gross and net estate were the same as determined by the Commissioner, and since the value of securities on a particular date is a question of fact, the only questions open for review are whether there was any substantial evidence to support such finding, Week v. Helvering (C.C.A.) 68 F.(2d) 693, and whether the Board has erred in interpreting section 303 (a) (1) allowing a deduction for losses.

The petitioners rely upon two propositions: (1) That the values set forth in their second set of values, which are $254,-290.86 less than the values fixed by the market quotations at the death of the petitioners' testate, more accurately reflect the true value of the securities at the death of the decedent; and (2) if the values of the gross estate are to be determined by the market quotations as of the death of the decedent, then the petitioners should be allowed the sum of $254,290.86 as a loss resulting from "fires, storms, shipwreck, or other casualty," and they urge that the act of Great Britain in going off the gold standard on September 21, 1931, was an "other casualty" within the meaning of the act.

■ The petitioners adduced no evidence, except sales by the pledgees, which occurred a year or two years later, that tends to support the lesser value as reflecting the true value of the gross estate, which they contend should have been accepted by the Commissioner and Board of Tax Appeals. They concede that the values determined by the Commissioner are substantially the quoted market values of the securities on the stock exchange as of the date of the death of the decedent, and that such values are substantially the same as reported in the inventory filed in the probate court. The Commissioner's method of valuing the securities was in accordance with the provisions of article 13 of Treasury Regulation 70.

■ This leaves as the only real question whether the going off the gold standard by Great Britain was a casualty within the meaning of section 303 (a) (1) of the Revenue Act of 1926. The language of the statute, we think, renders this case a proper one for the application of the ejusdem generis rule in its construction, viz., where words of a particular or specific meaning are followed by general words, the general words are. construed to apply only to persons or conditions of the same general kind as those specifically mentioned, unless there are other provisions clearly indicating that the rule is not applicable. Hickman et al. v. Cabot (C.C.A.) 183 F. 747; Shearer v. Anderson (C.C.A.) 16 F.(2d) 995, 51 A.L.R. 534; Swift & Co. v. Columbia Ry., Gas & Electric Co. (C.C.A.) 17 F.(2d) 46, 48, 51 A.L.R. 983; O'Connor et ux. v. Great Lakes Pipe Line Co. et al. (C. C.A.) 63 F.(2d) 523.

Congress gave no such indication in this statute, and it must be presumed to have had in mind that its language would be construed according to the established rules of construction.

The language of the court in the case of Swift & Co. v. Columbia Ry., Gas & Electric Co., supra, is applicable to the distinction existing between the casualties named in the statute and the abandonment of the gold standard by Great Britain: "And it is well settled that in such case the rule of construction known as Lord Tenderden's rule is applicable, that, where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described—ejusdem generis. Hickman v. Cabot (C.C.A.4th) 183 F. 747; Southern Ry. Co. v. Columbia Compress Co. (C.C.A.4th) 280 F. 344; Carnegie Steel Co. v. United States, 240 U. S. 156, 36 S.Ct. 342, 60 L.Ed. 576. Crop shortage is not included among the causes

specifically mentioned, nor is it of the same general class. All of the causes mentioned specifically are such as would directly interfere with receiving, using, or applying electric current, whereas a crop shortage could interfere *only indirectly*, by its effect upon trade conditions." (Italics supplied.) [4, 5] The deductions specifically allowed under the language of section 303 (a) (1) are *losses arising from "fires, storms and shipwreck,"* which obviously are casualties directly affecting the property of the deceased. We do not think Congress had in mind, in using the words "or other casualty," action by foreign countries which might indirectly affect securities here. Undoubtedly world conditions in 1931 were in an unbalanced state, and investors in this country and the value of securities following the debacle in the fall of 1929 were in a position to be affected by financial events abroad; but we think Congress could not have had in mind, in enacting section 303 in 1926, losses incurred ·through such events as a change in Great Britain's financial policy in 1931, or that of any foreign country.

It is difficult to conceive of it as another casualty of the same class as a fire or a shipwreck or a storm, by which loss is directly caused. It requires no student of finance, or expert in security values, or a psychiatrist, to determine when losses are the result of a fire, a storm, or a shipwreck. A flood caused by the breaking of a dam, or losses resulting from an earthquake, are also "other casualties" by which a loss of property may be directly caused.

Therefore the enumeration of fire, storm, or shipwreck clearly does not include all the casualties of this class, and thus leaves the words "or other casualty" without meaning, as contended by the petitioners, and so requires the extension of the words "or other casualty" to include any unforeseen event resulting indirectly in the depression of the value of securities. United States v. Mescall, 215 U.S. 26, 31, 30 S.Ct. 19, 54 L.Ed. 77; National Bank of Commerce v. Ripley, 161 Mo. 126, 132, 61 S.W. 587; Swift & Co. v. Columbia Ry., Gas & Electric Co., supra.

■■■ The effect of foreign financial policies on the market values of securities here, though unexpected, we think is not within the meaning of this statute, and the evidence of such experts as those above referred to, offered by the petitioners, as to the indirect results of such policies on se-

curities in the United States, was not improperly excluded. The Board of Tax Appeals is an administrative body, and the rules of evidence applied in courts of law are not necessarily binding on the Board. It may hear or exclude such evidence as it thinks is helpful on the one hand, or immaterial on the other, so long as it does not deprive a taxpayer of a fair hearing and due process. The exceptions taken to the excluding of the testimony of the experts referred to do not avail the petitioners.

The order of the Board of Tax Appeals is affirmed.