THE GRANGE INSURANCE ASSOCIATION OF CALIFORNIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87495.    Filed December 29, 1961.

*Thomas E. Smail, Jr., Esq.*, for the petitioner.
*William T. Ivey, Jr., Esq.*, for the respondent.

---

## OPINION.

OPPER, *Judge:* Although petitioner did not itself operate "under the lodge system" within the meaning of section 501(c)(8) of the 1954 Code,[1] it is clear that it conforms to the exemption provision of subsection (A) because it operates "for the exclusive benefit of the members of a fraternity [the Grange] itself operating under the lodge system." This is, in effect, conceded by respondent. As will presently appear, we need not deal with his contention that petitioner was

[1] SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.
  (c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to. in subsection (a):

  *         *         *         *         *         *         *

  (8) Fraternal beneficiary societies, orders, or associations—
    (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and
    (B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents.

a "Mutual insurance compan[y] * * * other than life or marine"[2] under section 501(c)(15) and, as such, could not also qualify for exemption under subsection (8).

The real issue is limited to the difficult question whether protection against loss by fire is included in the phrase "payment of * * * accident, or other benefits" as employed in subsection (8)(B). Although the legislation has not changed materially since the 1909 Corporate Excise Tax Act, this question appears to be one of first impression.

The difficulty is that, whatever may be the dictionary definition,[3] in insurance language the term "accident" is restricted to mishaps to the person of the insured.

By accident insurance is generally meant a contract whereby one for a consideration agrees either to indemnify another against personal injury resulting from accident, or, in case death results, to pay a fixed sum as compensation therefor; i.e., to indemnify the insured in the amount stipulated in case of bodily injury not resulting in death, and, in case death results from the injury, to pay a fixed compensation.

1 Couch, Insurance, sec. 1:16, p. 43 (2d ed.). The same thought is expressed in Vance, Insurance 942–943 (3d ed.):

Accident insurance is similar in most respects to life insurance, of which it is properly a branch * * * and a large portion of the accident insurance business is written by life insurance companies.

*     *     *     *     *     *     *

Accident insurance is so closely akin to life insurance[3] that it is generally held that statutes which have been enacted for the regulation of the business of life insurance, or for the purpose of fixing the rights of parties under contracts of life insurance, apply equally well to those of accident insurance. [Footnote omitted.]

In *Miller* v. *Maryland Casualty Co.*, 193 F. 343, 348 (C.A. 3, 1912):

With a view to harmonizing state and federal decisions and producing uniformity in the Pennsylvania system of insurance, * * * the act of 1885 [referring only to policies "of life insurance" was held to be] * * * applicable to accident policies.

Although this case was decided after the passage of the 1909 Corporate Excise Tax Act, it was prior to the first general income tax legislation adopted in 1913. The decision might well have come to the

---

[2] (15) Mutual insurance companies or associations other than life or marine (including interinsurers and reciprocal underwriters) if the gross amount received during the taxable year from the items described in section 822(b) (other than paragraph (1) (D) thereof) and premiums (including deposits and assessments) does not exceed $75,000.

[3] The dictionary definitions are not overlooked by authorities in the insurance field. For example, Vance, Insurance 948 (3d ed.), takes note of the fact that " 'accident' is defined by Webster as follows: 'An event which takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.' In Bouvier's Law Dictionary an accident is said to be, 'An event which, under the circumstances, is unusual and unexpected. An event the real cause of which cannot be traced, or is at least not apparent.' "

knowledge of Congress and the committees concerned with the enactment of that statute.

Since Congress was dealing in the section under consideration with life insurance,[4] its intent to restrict the meaning of "accident" to its technical insurance usage appears to us probable.[5] And the rule of *ejusdem generis* would also require us to limit the meaning of "other" to benefits that are similar in character to the personal bodily mischance involved in life, health, and accident insurance.[6] *Lyman* v. *Commissioner*, 83 F. 2d 811, 813 (C.A. 1, 1936). See also *Consumers Credit Rural Electric Cooperative Corp.*, 37 T.C. 136 (1961); I.T. 3261, 1939-1 C.B. 122; Rev. Rul. 58-442, 1958-2 C.B. 194, 196. There is nothing to the contrary in the extensive legislative history discussed at great length by both parties in their excellent briefs.

Finally, while it may be true, as petitioner contends, that the legislative intent was to have reference to State law with respect to the type of association or organization involved,[7] we are unable to conclude that anything in the Federal legislation was intended to permit the State of California to determine whether petitioner could qualify under section 501(c)(8)(B), *supra*.

For the reasons stated, we regard the deficiency as correctly determined in this respect.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[4] That this type of protection is the foundation of the early forms of life insurance has long been recognized: "In fact, the plan here carried out is in essence the assessments for death charges made by the ancient guilds on their membership, from which the origin of life insurance has been traced, 9 Encyc. Soc. Sc. 462; Encyc. Britannica 1948, tit. Life Insurance, and still employed by mutual benefit and fraternal societies, though their popularity has diminished in the last half century." *Commissioner* v. *Treganowan*, 183 F. 2d 288, 291 (C.A. 2, 1950), reversing 13 T.C. 159 (1949), certiorari denied 340 U.S. 853; and see *Estate of William E. Edmonds*, 16 T.C. 110, 117 (1951).

[5] In *Philadelphia & Reading Relief Association*, 4 B.T.A. 713, 725 (1926), the words were treated as synonymous with "relief of members in case of sickness, injury or death."

[6] Of course, certain limited fire risks might be included without affecting the present issue: "Another particular hazard which many accident policies cover is death or injury sustained as the result of the burning of a building while the insured is therein." Vance, Insurance 964 (3d ed.).

[7] "MR. CUMMINS. And whether a particular organization is an insurance company is to be decided by the laws of the state in which the company is organized.

"MR. FLINT. I take it the Senator is correct." 44 Cong. Rec. 3937.