**The GRANGE INSURANCE ASSOCIATION OF CALIFORNIA, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 18020.**

United States Court of Appeals
Ninth Circuit.

May 2, 1963.

Thomas E. Smail, Jr., Sacramento, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Ralph A. Muoio and Martin Cowan, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before BARNES and BROWNING, Circuit Judges, and MADDEN, Judge of the Court of Claims.

BROWNING, Circuit Judge.

The Commissioner of Internal Revenue and the Tax Court[1] have concluded that The Grange Insurance Association of California is not exempt from taxation under 26 U.S.C.A. § 501(c) (8), which exempts organizations meeting the following description:

"Fraternal beneficiary societies, orders, or associations—

"(A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and

"(B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents."

Appellant satisfies clause "(A)" since it is a fraternal association operating for the exclusive benefit of the members of a fraternity (the California State Grange) which operates under the lodge system.[2]

---

1. 37 T.C. 582 (1961).

2. The following partial description of the organization and operation of appellant association (petitioner in the Tax Court) appears in the findings of the Tax Court:

"Petitioner was organized on April 28, 1916, under the name 'The Grange Fraternal Fire Insurance Association of California' for the purpose of enabling members of the California State Grange to bind themselves to contribute to each other's loss by fire.

"Petitioner is only authorized to act in California and only between Grange members. As soon as a Grange member becomes delinquent in dues, he immediately loses his policy and is dropped from membership in petitioner.

"Any member of the Grange upon becoming insured by petitioner becomes a member of petitioner and only policyholders are members.

"Only members of petitioner have the right to elect its officers. All officers of petitioner must be Grange members in good standing.

"Petitioner has no capital stock and is a nonprofit corporation. It operates on the assessment system in that if its payments should exceed its premiums and reserve, it is permitted to assess its Grange members to make up the loss.

As to clause "(B)", appellant provides for the payment of benefits to its members, but the benefits compensate for property loss by fire, and the Commissioner and the Tax Court have interpreted the phrase "life, sick, accident, or other benefits" in clause "(B)" to limit the application of the subsection to associations which pay benefits for injuries to the *person* as distinguished from injuries to *property*.

■ We read the statute differently. "Generally speaking, the language in the Revenue Act, just as in any statute, is to be given its ordinary meaning * *." [3] In ordinary usage, the adjectives "life" and "sick," qualifying "benefits," suggest payments for non-property losses, but this is not true of "accident." The adjective "accident," applied to "benefits," identifies a quality of the cause of injury; it implies no limitation as to the nature of the object injured. We think that in normal usage "accident" benefits include payment for damage to property quite as naturally as payment for injury to the person.[4] In short, the statutory phrase "accident or other benefits" is sufficiently broad to include payments for injuries to property as well as to the person; it carriers no hint of a distinction between the two.

■ The meager legislative history of Section 501(c) (8) and its precursors indicates that the purpose of Congress was to grant a preferred status to non-profit, primarily fraternal organizations (operating under a lodge system), which incidentally extend insurance benefits to members. The payment of benefits was of course required, but the moving consideration was the character and purpose of the organization.[5]

---

"Petitioner adjusts the premiums paid by the members according to its losses and if the losses for the previous year are high, then the rates rise accordingly, and if the losses are low, the rates are adjusted downward. The Grange fire insurance is sold to members at actual costs on a nonprofit basis.
* * * * *
"There are over 300 lodges of local Granges in the State of California and the majority of these have a member of the local Grange who acts as an insurance agent.

"Local members of the Grange act as insurance agents as a service to their Grange members. The agents are paid only a small commission which is considered to cover their actual expenses in estimating and investigating the property of their fellow Grange member to be insured. None of the insurance agents receives any salary and all agents must be members in good standing of the Grange.
* * * * *
"Petitioner has never employed the practice of mutual insurance companies of returning part of premiums paid; in fact, petitioner has never paid a cash dividend."

3. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 249, 61 S.Ct. 878, 879, 85 L.Ed. 1310 (1941). See Hanover Bank v. Commissioner, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962); Lynch v. Alworth-Stephens Co., 267 U.S.

364, 370, 45 S.Ct. 274, 69 L.Ed. 660 (1925); Commerce-Pacific Inc. v. United States, 278 F.2d 651, 654 (9th Cir. 1960); Estate of Little v. Commissioner, 274 F.2d 718, 727 (9th Cir. 1960); 1 Mertens, Federal Income Taxation, § 3.14 (1962).

4. The usual "legal" meaning is the same. See, e. g., 1 Bouvier's Law Dictionary 111 (Rawle's 3d rev. ed. 1914):
"ACCIDENT (lat. *accidere,—ad,* to and *cadere,* to fall). An event which, under the circumstances, is unusual and unexpected. An event the real cause of which cannot be traced, or is at least not apparent. Wabash, St. L. & Pac. Ry. Co. v. Locke, 112 Ind. 404, 14 N.E. 391, 2 Am.St.Rep. 193.
"The happening of an event without the concurrence of the will of the person by whose agency it was caused; or the happening of an event without any human agency. *The burning of a house in consequence of a fire made for the ordinary purposes of cooking or warming the house is an accident of the first kind; the burning of the same house by lightning would be an accident of the second kind;* 1 Fonbl.Eq. 374, 375, n.; Morris v. Platt, 32 Conn. 85; Crutchfield v. [Richmond & D.] R. Co., 76 N.C. [320] 322; Hutchcraft's Ex'r v. Ins. Co., 87 Ky. 300, 8 S.W. 570, 12 Am.St.Rep. 484. * * *" (Emphasis added.)

5. See H.R.Rep. No. 350, 67th Cong., 1st Sess. 13 (1921); H.R.Rep. No. 486, 67th Cong., 1st Sess. 32 (1921); H.R.Rep. No.

Nowhere have we found any indication that Congress intended the exemption to depend upon the type of benefits paid. The legislative history reflects no purpose which might be served by having the exemption turn upon this consideration, and the government suggests none.

The government argues that (1) the subject matter of Section 501(c) (8) is insurance, (2) the phrase "life, sick, accident, or other benefits" should therefore be read as a list of types of insurance, and (3) "accident insurance," as a technical term of the trade, includes coverage for losses due to personal injury but excludes coverage for property losses. Taken literally, the argument is strained: "sick insurance" is not an accepted designation of a type of insurance. Taken as a general argument that in the insurance field the word "accident" has a meaning limited to impact upon persons, the contention is refuted by appellant's demonstration to the contrary.[6]

The government also argues that a congressional intent to exclude fraternal organizations paying benefits for property losses should be implied because, historically, fraternal organizations did not furnish such benefits. Appellant attacks the accuracy of the premise, citing the Grange itself which was organized in 1916, and which has paid benefits for property loss from fire from its inception.

In any event, the burden of demonstration rested with the government, and the government has offered nothing to support its assertion.

Reversed.

86, 63d Cong., 1st Sess. 26 (1913) ; 50 Cong.Rec. 3856 (1913) ; 44 Cong.Rec. 3937–38 (1909).

The applicable regulations similarly stress the fraternal nature of the society, adding that it is "also necessary" that the society have an established system for the payment of benefits. (26 C.F.R. § 1.501(c) (8)–1.) The structure of the Code reflects the same emphasis: the subject matter of the subchapter of which Section 501 is a part is "Exempt Organizations."

6. Many court opinions contain references to use of the word "accident" in insurance policies covering damage to property. Appellant cites these examples: Ohio Cas.

Ins. Co. v. Marr, 98 F.2d 973, 975 (10th Cir. 1938) ("The word 'accident' as used in the policy means an untoward and unforeseen occurrence in the operation of the automobile which results in injury to the person or property of another.") ; American Cas. Co. of Reading, Pa. v. Minnesota Farm Bureau Serv. Co., 270 F. 2d 686, 688 (8th Cir. 1959) ("By their terms the various insurance policies extend coverage to the plaintiff for property damage by reason of the liability imposed on the plaintiff by law arising out of accidents.") ; and Kuckenberg v. Hartford Acc. & Indem. Co., 226 F.2d 225 (9th Cir. 1955) (concerning liability insurance policy covering property damage "caused by accident").